# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**NATURAL CHEMISTRY L.P.,**

    **Plaintiff,**

**v.**                                                                                  **Case No:   6:13-cv-1607-Orl-31KRS**

**ORENDA TECHNOLOGIES, INC.,**
**NATURAL POOL PRODUCTS, INC.,**
**HAROLD EVANS and PURE PLANET**
**SCIENCE & TECHNOLOGY, INC.,**

    **Defendants.**

## ORDER

This matter is before the Court on the Defendants' various motions to dismiss and Plaintiff, Natural Chemistry L.P.'s responses.[1] While the Plaintiff has requested oral argument on the motions, the essential question is whether the Amended Complaint (Doc. 35) asserts valid claims, and the matter can, therefore, be evaluated on the papers.

### I.     Background

Plaintiff sets forth an account of Defendant Evans promoting products and making statements on behalf of several allegedly related pool supply businesses, Natural Pool Products, Inc. ("NPP"), Orenda Technologies, Inc. ("Orenda"), and Pure Planet Science & Technology, Inc. ("Pure Planet"), that underlies its six-count complaint. At base, the Plaintiff's theory is that Evans has been

---

[1] The respective motions and responses are: Natural Pool Products, Inc.'s Motion to Dismiss (Doc. 39); Plaintiff's Response to Natural Pool Products, Inc. (Doc. 44); Harold Evans Motion to Dismiss (Doc. 40); Plaintiff's Response to Evans (Doc. 45); Orenda Technologies, Inc.'s Motion to Dismiss (Doc. 41); Plaintiff's Response to Orenda Technologies, Inc. (Doc. 46); Pure Planet Science & Technology, Inc.'s Motion to Dismiss (Doc. 42); Plaintiff's Response to Pure Planet Science & Technology, Inc. (Doc. 47).

donning the hats of the business defendants and undertaking illegitimate marketing and business competition against the Plaintiff.

Plaintiff holds a patent for a pool cleaning product and method under United States Patent No. 6,338,800 (the "800 Patent"). The Plaintiff markets a product, PHOSfree®, that utilizes the methods and products protected under the 800 Patent to reduce phosphorus in recreational swimming pool water. That product was the subject of prior litigation between Natural Chemistry and Orenda which resulted in a confidential settlement between the parties ("Settlement Agreement"). *See Natural Chemistry L.P. v. Orenda Technologies, Inc.*, Case No. 6:09-CV-00743-ORL-31GJK (M.D. Fla. Sept. 9, 2009) (order dismissing case pursuant to joint stipulation of dismissal); (*see also* Doc. 39 at 18-26). The defendants promote competing products that allegedly violate the 800 Patent, and accordingly violate the underlying confidential Settlement Agreement.

The Plaintiff asserts that, following Orenda's entering the Settlement Agreement, the company was functionally dissolved[2] and NPP and Pure Planet took over Orenda's assets and/or operations. Plaintiff further asserts that Evans and his son-in-law, not named as a defendant, purportedly carry on business through NPP and Pure Planet while holding themselves out to the public as Orenda. According to the Amended Complaint Evans is continuing to operate Orenda under the guise of NPP and Pure Planet. Thus, the Plaintiff asserts that the Defendants are bound by the Settlement Agreement.

Additionally, Evans allegedly made statements to Plaintiff's customers and/or potential customers that constitute various business torts. These include, the assertion that Evans attended a professional meeting with the members of the Independent Pool & Spas Service Association

---

[2] While Orenda does not appear to be an active company based on the Plaintiff's allegations, the Amended Complaint does not allege that it formally dissolved.

("IPPSA"), during which he stated "that Natural Chemistry's products caused a detrimental condition of water mold in pools." (Doc. 35 ¶ 30). Evans also contacted Natural Products' competitors and customers on behalf of one or more of the business Defendants and made false claims about Natural Chemistry's products as a part of an effort to compete with Natural Chemistry. These acts, along with the alleged violations of the Settlement Agreement related to the 800 Patent form the basis of this case.

**II.     Standard**

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the Plaintiff, *see, e.g.*, *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). Further, Federal Circuit substantive law governs patent cases, but district courts apply regional circuit law on procedural matters such as motions to dismiss. *See In re Bill of Lading,* 681 F.3d 1323, 1331 (Fed.Cir.2012) (noting that motions to dismiss are reviewed under the regional circuit law).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element

of a cause of action. *Roe v. Aware Woman Ctr.for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-555 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *Id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950-1951 (2009).

### III. Analysis

### A. Breach of Contract and Conspiracy

The Defendants' various motions argue that the claims for breach of contract against Evans and Pure Planet should be dismissed,[3] as the Defendants other than Orenda are not signatories to the Settlement Agreement. The Settlement Agreement limits its binding effects to "officers, directors, shareholders, employees, agents, and representatives" of Orenda, however, at this early stage of the case it is impossible to determine whether Evans or Pure Planet meet that description nor is it possible to determine if Orenda had the authority to bind them. Yet, the Plaintiff has asserted that the Settlement Agreement binds Orenda, Evans, and Pure Planet, that it has been breached, and that there have been damages. *Textron Fin. Corp. v. Lentine Marine, Inc.*, 630 F. Supp. 2d 1352, 1356 (S.D. Fla. 2009) (enumerating elements for breach of contract claim). A determination as to whether Evans or Pure Planet were "officers, directors, shareholders, employees, agents, [or] representatives" is better addressed with the background facts.

---

[3] The Plaintiff has withdrawn its claim for breach of contract against NPP on the basis that it was reportedly not in existence at the time the settlement agreement was executed. (Doc. 44 at 3).

The Defendants argue that the conspiracy claim must fail because the underlying breach of contract claim fails and further, that the Plaintiff failed to plead with the requisite particularity of a fraud claim. As previously discussed, there is an actionable claim against Orenda, Pure Planet, and Evans. Additionally, while the Defendants try to impute a claim of fraud here, that is not the claim alleged, and the Plaintiff need not plead their claim for conspiracy with the level of particularity required by Federal Rule of Civil Procedure 9(b).

The conspiracy claim, nevertheless, fails to state a claim. To state a claim for civil conspiracy, one must allege an underlying unlawful act. *Florida Fern Growers Ass'n, Inc. v. Concerned Citizens of Putnam Cnty.*, 616 So. 2d 562, 565 (Fla. Dist. Ct. App. 1993) (to state civil conspiracy claim, a plaintiff must assert conspirators agreed to undertake "an unlawful act or to do a lawful act by unlawful means"). Breaching a contract is not, by itself, unlawful. It is simply a failure to perform as one agreed to perform. While there can be unlawful acts related to a breach of contract, i.e., tortious interference with a contract, simply breaching a contract with the aid of other entities cannot support a conspiracy claim. *See Cabrera v. Wright*, 516 So. 2d 95 (Fla. Dist. Ct. App. 1987) (holding that there was no legal basis support a claim for conspiracy to breach a contract). Acts such as those described in the Amended Complaint may support a claim for tortious interference with a contract or, perhaps, even conspiracy to tortiously interfere with a contract, which has been recognized in the Middle District *See, e.g., Bray v. Lexington*, 527 F. Supp. 2d 1355, 1372 (M.D. Fla. 2007). However, as it stands the Count for conspiracy must be dismissed.

### B. Business Torts

The Plaintiff argues that, in addition to continuing to violate the 800 Patent and breach the Settlement Agreement, the Defendants have harmed it in other ways. These include attempting to interfere with its business relationship with Florida pool supply stores, such as Leslie's Poolmart.

Further, the Plaintiff has alleged that Evans, acting on behalf of either some or all of the business defendants, represented to the IPPSA that the Plaintiff's product created water mold problems.

### 1. Tortious Interference with an Advantageous Business Relationship: Leslie's Poolmart

The allegations in the Amended Complaint are enough to assert a claim that the various defendants have interfered with an advantageous business relationship. The Complaint indicates at least one business relationship, the Plaintiff's relationship with Leslie's Poolmart, was interfered with. (Doc. 35 ¶¶ 35-38). The interference included the false report that Plaintiff had offered to purchase Orenda with the intent to portray the Plaintiff as weak and unable to compete with Orenda's product. (*Id.*). The Plaintiff claims that this ultimately resulted in lost sales and loss of goodwill which is enough to state a tortious interference claim. *See Greenberg v. Mount Sinai Med. Ctr. of Greater Miami, Inc.*, 629 So. 2d 252, 255 (Fla. Dist. Ct. App. 1993) (enumerating elements for tortious interference with a business relationship).

### 2. Deceptive and Unfair Trade Practice

As the Defendants point out, typically claims made under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. ¶ 501.201 et seq., are geographically restricted—that is, FDUTPA does not generally apply to acts undertaken outside of Florida. In the cases cited, including former cases by this Court, the dismissals were typically predicated on acts occurring outside of Florida. The situation here is reversed—the Plaintiff is an out of state business that is conducting business in the state, and a "substantial" amount of the activity is alleged to have occurred here. (Doc. 35 ¶ 9). Accordingly, the home state of the Plaintiff does not disqualify it from bringing a FDUTPA claim. *See Akzo Nobel Coatings, Inc. v. Auto Paint & Supply of Lakeland, Inc.*, 8:09-CV-2453-T-30TBM, 2011 WL 5597364, at *3-4 (M.D. Fla. Nov. 17, 2011) ("[T]he alleged deceptive, and/or unfair acts are alleged to have taken place in Florida. As a result the action does

not have attenuated connections to the state. On the contrary, Florida is the state with the primary interest in the action. Accordingly, the FDUTPA is applicable even if [Plaintiff] is a non-resident . . . ."). Further, FDUTPA may be asserted by one entity against a competitor. *Id.* (holding competing businesses may bring FDUTPA claims); *Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F.Supp.2d 1269 (S.D. Fla. 2013) (same). Accordingly, the Plaintiff has sufficiently asserted a FDUTPA claim.

### 3. Misleading Advertising

Finally, a claim for misleading advertising requires that the misleading advertisement be made to the Florida general public or a portion thereof. § 817.41(1), Fla. Stat. (proscribing misleading advertisements published to the "general public of the state, or *any portion thereof*" (emphasis added)). In this case, the Plaintiff asserted that at least some of the individuals or companies at the IPPSA conference were members of the general public of Florida, that they are customers of the Plaintiff, and the alleged statements were made to influence purchasing decisions. (Doc. 35 ¶¶ 32, 98-102). As the Defendants have not provided authority that limits § 817.41's broad language, encompassing advertisements to *any portion* of the general public of Florida, the Plaintiff has stated a claim for misleading advertising.

### 4. Incorporation of All Prior Paragraphs

While the Amended Complaint does incorporate all of the prior paragraphs into each count, typically the mark of a shotgun pleading, it is not inappropriate given the context of this case. Evans is alleged to have overseen the actions of the various business Defendants in a ball and cup game to avoid contractual obligations and engage in unfair competition. Determining which of his acts were done in what capacity and for which Defendant requires discovery. Further, sorting through which claims are viable against which Defendants requires facts.

It is therefore,

**ORDERED**, the Motions to Dismiss (Docs. 39, 40, 41, and 42) are **GRANTED IN PART AND DENIED IN PART**. Count II for Conspiracy is dismissed and the Motions are denied in all other respects.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on July 8, 2014.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party