**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**NATURAL CHEMISTRY L.P.,**

    **Plaintiff,**

**v.**                                                    **Case No:   6:13-cv-1607-Orl-31KRS**

**HAROLD EVANS and PURE PLANET**
**SCIENCE & TECHNOLOGY, INC.,**

    **Defendants.**

## ORDER

This matter is before the Court on Harold Evans' Motion for Summary Judgment (Doc. 101), Pure Planet Science & Technology, Inc.'s ("Pure Planet") Motion for Summary Judgment (Doc. 100), Natural Chemistry L.P.'s ("Natural Chemistry") Responses to the Motions (Docs. 107, 108), and the Defendants' Replies in Support of the Motions (Doc. 110, 111).

**I.    Background**

This case arose from the settlement (Doc. 108-1) of an earlier lawsuit between Natural Chemistry and Orenda Technologies, Inc. ("OTI"),[1] a pool chemical company owned by Richard Kersey, alleging that OTI had infringed Natural Chemistry's patent for lanthanum compounds used to clarify recreational swimming pools. Not long after the suit between Natural Chemistry and OTI settled, OTI entered into an asset purchase agreement with Pure Planet, which is run by Evans. Before the agreement, Evans sold OTI's products through his pool service and repair company; then,

---

[1] OTI was formerly a defendant in this lawsuit, however Natural Chemistry dropped the claims against it.

following the lawsuit, Evans formed Pure Planet to purchase OTI's assets and continued to sell the pool clarifier using OTI's brand.

The Plaintiff now asserts that, despite the asset purchase agreement's express disclaimer of non-enumerated obligations or liabilities, Pure Planet and Evans became bound by OTI's obligations under the settlement agreement. Plaintiff further asserts that Pure Planet and Evans have violated those obligations. Plaintiff's case turns on whether the asset sale or acts of the purchaser, Pure Planet, were the type that resulted in a transfer of the contractual obligations.

**II.     Facts**

It is undisputed OTI's owner, Richard Kersey, was the sole officer, director, and shareholder for OTI. All assets of OTI were transferred to Pure Planet through an asset purchase on December 31, 2009. (Doc. 108-4 ¶ 1). Prior to the asset sale, Evans' company, Pool Surgeon, sold OTI products and was compensated on a commission basis. (Doc. 101-1 at 9). After the sale, Kersey became a consultant for Pure Planet. (*Id.* at 22-23). Over the course of four years, he received in excess of $400,000.00; however, it seems he did very little consulting for this compensation and the money appears to simply be part of the purchase price of OTI's assets. (Doc. 101-2 at 22-25). Indeed, in the section entitled "Purchase Price," the asset purchase agreement references a separate consulting agreement. (Doc. 108-4 ¶ 2). While Evans, through Pure Planet, fulfilled some of OTI's outstanding obligations, there were no affirmative acts demonstrating an across-the-board assumption of all of OTI's contractual obligations. (*See* Doc. 108-14 at 2). As to those obligations not specifically assumed, the asset purchase agreement stated: "Purchaser is not assuming any liability and/or obligation of Seller or the Business or the Assets or Kersey." (Doc. 108-4 ¶ 8). Finally, no record evidence shows that Kersey or Evans had control of each other's business entities, or that they were officers, directors, or shareholders in each other's businesses.

Evans took no action to ensure that the product or his company conformed to the terms of the settlement agreement. (Doc. 101-1 at 22, 28). Following the sale, he continued to sell OTI's products just as he had received them, presuming, but not verifying, that the previous patent issue had been resolved. (*Id.*). The only difference after the asset sale was that Evans received the profit from the sales (less Kersey's portion) rather than a commission.

### III.    Standard

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56. Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the nonmoving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

**IV.  Analysis**

    **a. Successor Liability as to Pure Planet**

Under Florida law,[2] "[a] corporation that acquires the assets of another business entity does not as a matter of law assume the liabilities of the prior business." *Corporate Exp. Office Products, Inc. v. Phillips*, 847 So. 2d 406, 412 (Fla. 2003). In an asset purchase, the parties' agreement sets forth each party's obligations—including whether a seller's contractual obligations will bind a purchaser. *See id.* There are exceptions, however, under which an asset purchaser can be bound by a seller's contract. An asset purchaser can be subject to successor liability if: "(1) the successor expressly or impliedly assumes obligations of the predecessor, (2) the transaction is a de facto merger, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor." *Bernard v. Kee Mfg. Co.*, 409 So. 2d 1047, 1049 (Fla. 1982). Here, only the implied assumption of the obligation and continuation exceptions merit discussion.[3]

---

[2] The parties obtusely address whether Arizona or Florida law applies in this case, citing a choice of law clause in the settlement agreement. As the substantive law is the same, the disagreement is without consequence. *Compare Warne Investments, Ltd. v. Higgins*, 195 P.3d 645, 650 (Ariz. Ct. App. 2008) (enumerating the four exceptions where successor liability attaches) *with Bernard v. Kee Mfg. Co.*, 409 So. 2d 1047, 1049 (Fla. 1982) (recognizing the same four exceptions).

[3] Plaintiff's argument for successor liability based on fraud is without merit. Natural Chemistry argues that Pure Planet is liable as a successor to OTI because the asset sale had badges of fraud. However, the badges of fraud outlined in Florida Statute § 726.105 apply to debtor/creditor relationships, not contractual obligor/obligee relationships. Natural Chemistry is not a creditor of OTI, and Natural Chemistry does not claim OTI or Pure Planet owes it any debt. Further, the only "badge of fraud" that has a modicum of traction is the apparent low purchase price for OTI's assets based on the amount in the asset purchase agreement. (*See* Doc. 108-4 at ¶ 2 (stating purchase price is $3,655.90)). Transfer for less than fair value is a badge of fraud. However, the asset purchase agreement plainly states that the total consideration included "other good and valuable consideration"—that is to say, consideration not contained in the written agreement. (Doc. 108-4 at 2). Pure Planet paid Kersey in excess of $400,000.00 in consulting fees. (Doc. 100-2 at 22-23). Further, Kersey had estimated OTI's value at several hundred thousand dollars. (*Id.*) Evans stated that the fees were part of the purchase price and that testimony is not contradicted. (Doc. 100-1 at

#### i. Implied Assumption of Settlement Obligations

Contrary to Plaintiff's argument, an asset purchaser does not impliedly assume contractual obligations simply by being aware of the corporation's prior obligations. *See Krogen Exp. Yachts, LLC v. Nobili*, 947 So. 2d 581, 583 (Fla. 4th DCA 2007). Knowledge alone is insufficient to give rise to successor liability, particularly where the asset purchase agreement "expressly disclaims any successor liability." *See id.* Here, the asset purchase agreement expressly disclaims successor liability. (Doc. 108-4 ¶ 8). Natural Chemistry contends that Pure Planet impliedly assumed the settlement obligations of OTI. In support of its argument, Natural Chemistry points to Pure Planet's knowledge of the settlement agreement at the time of the asset purchase and Pure Planet's satisfaction of some of OTI's third party obligations. This evidence does not support a finding that Pure Planet impliedly assumed OTI's obligations under the settlement agreement. *See Krogen Exp. Yachts*, 947 So. 2d at 583 (holding that successor's knowledge of warranty contract claims, coupled with maintenance of accounts to cover those claims, was insufficient to create successor liability). There is no evidence of an act by either Pure Planet or Evans that would indicate an attempt to comply with the obligations of the settlement agreement. Indeed, Evans' testimony indicates he was only vaguely aware of the agreement, and he clearly was not acting as if he were bound by it. (*See* Doc. 101-1 at 25-26). While Evans continued to sell OTI's products under the Orenda brand, and he may have believed those products met the requirements of the settlement, he took no action, nor did he forestall any action, based on the obligations of the underlying settlement agreement. Accordingly, there is no factual basis to show that Defendants impliedly assumed OTI's contractual obligations.

---

17).

### ii. Mere Continuation of OTI

Plaintiff's argument that Pure Planet is merely a continuation of OTI is similarly unavailing. Where a successor corporation is a mere continuation of the predecessor corporation as "evidenced by such things as the same management, personnel, assets, location and stockholders," an asset purchaser may be subject to successor liability. *Orlando Light Bulb Serv., Inc. v. Laser Lighting & Elec. Supply, Inc.*, 523 So. 2d 740, 742 n.1 (Fla. 5th DCA 1988). Natural Chemistry argues that the elements for mere continuation are satisfied, but only discusses the mere continuation factors under Michigan law. Under Florida law,[4] a common identity of the assets, location, management, personnel, and stockholders in the selling and purchasing corporation is essential to a finding of mere continuation. *See Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 630 (11th Cir. 1996). It is undisputed that Kersey owned OTI prior to the asset purchase, and it is undisputed that Pure Planet purchased OTI's assets. There is no common identity of the officers, directors, or stockholders between OTI and Pure Planet.[5] Without any overlap in the officers, directors, or stockholders, there is no basis to find that Pure Planet was a mere continuation of OTI. Because there is no basis to find Pure Planet was bound by the settlement, it cannot be liable for breach.

### b. Liability as to Evans

Evans cannot be held personally liable here, as Pure Planet is not liable for a breach, and even if it were liable, there is no basis to pierce Pure Planet's corporate veil. Further, there is no

---

[4] Under Arizona law, the result would be the same: a finding of mere continuation requires "a substantial similarity in the ownership and control of the two corporations." *A.R. Teeters & Associates, Inc. v. Eastman Kodak Co.*, 836 P.2d 1034, 1040 (Ariz. Ct. App. 1992).

[5] Plaintiff's own argument with regard to the fraud exception is contrary to the notion that Kersey had any manner of controlling influence in Pure Planet, as "Kersey admits that he never provided any . . . consulting services for Pure Planet." (Doc. 108 at 11).

basis to impute successor liability onto Evans individually. Accordingly, Evans cannot be liable under the settlement agreement, and summary judgment is proper.

In consideration of the foregoing, it is hereby

**ORDERED** that the Motions for Summary Judgment filed by Defendants Pure Planet (Doc. 100) and Harold Evans (Doc. 101) are **GRANTED**. The Clerk is directed to enter judgment in favor of the Defendants and against the Plaintiff and close the case. All other pending motions are **DENIED AS MOOT**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 1, 2015.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party